Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

IN RE: FACEBOOK, INC. CONSUMER     )
PRIVACY USER PROFILE LITIGATION.   )   NO. 18-MD-2843 VC (JSC)
                                       San Francisco, California
                                       Friday, June 19, 2020

**TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                        BLEICHMAR FONTI & AULD LLP
                        555 12th Street
                        Suite 1600
                        Oakland, California  94607
        BY: **LESLEY E. WEAVER, ESQ.**
              **ANNE K. DAVIS, ESQ.**
              **MATTHEW MONTGOMERY, ESQ.**


                        KELLER RORHBACK, LLP
                        1201 Third Avenue
                        Suite 3200
                        Seattle, Washington  98101
        BY: **DEREK W. LOESER, ESQ.**
              **DAVID J. KO, ESQ.**
               **CARI C. LAUFENBERG, ESQ.**

For Defendants:
                        GIBSON DUNN & CRUTCHER LLP
                        200 Park Avenue
                        New York, New York  10166
        BY: **ORIN SNYDER, ESQ.**


Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
                 Official Reporter, U.S. District Court

(Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>**:

For Defendants:

                    GIBSON DUNN & CRUTCHER LLP
                    1881 Page Mill Road
                    Palo Alto, California  94304
       **BY:  MARTIE P. KUTSCHER, ESQ.**

                    GIBSON DUNN & CRUTCHER LLP
                    2100 McKinney Avenue
                    Suite 1100
                    Dallas, Texas  75201
       **BY:  RUSSELL H. FALCONER, ESQ.**

| | |
|---|---|
| 1 | **Friday - June 19, 2020**                                    **9:01 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **THE CLERK:** Calling Civil Action 18-MD-2843, In Re |
| 4 | Facebook, Inc. |
| 5 | Counsel, starting with plaintiffs, can you please state |
| 6 | your appearances for the record? |
| 7 | **MR. LOESER:** Good morning, Your Honor. Derek Loeser |
| 8 | for the plaintiffs. |
| 9 | **THE COURT:** Good morning. |
| 10 | **MS. WEAVER:** Good morning, Your Honor. Your Honor, |
| 11 | Lesley Weaver from Bleichmar Fonti for the plaintiffs. With |
| 12 | me is Anne Davis and Matt Montgomery. |
| 13 | And Ms. Davis will be doing the speaking on our behalf |
| 14 | today, largely. |
| 15 | **THE COURT:** All right. Good morning. |
| 16 | **MS. WEAVER:** Good morning. |
| 17 | **MS. DAVIS:** Good morning. |
| 18 | **MR. KO:** Good morning, Your Honor. David Ko, Keller |
| 19 | Rohrback, also on behalf of plaintiffs. |
| 20 | **THE COURT:** Good morning. |
| 21 | **MS. LAUFENBERG:** Good morning, Your Honor. Cari |
| 22 | Laufenberg, Keller Rohrback, on behalf of plaintiffs as well. |
| 23 | **THE COURT:** Good morning. All right. |
| 24 | And for Facebook? |
| 25 | **MR. SNYDER:** Good morning, Judge. It's Orin Snyder |

```
 1   here with Deb Stein, Russ Falconer, and Martie Kutscher, all

 2    from Gibson Dunn, for the defendants.

 3        THE COURT:  All right.  Good morning.

 4      So thanks very much for your statements and for submitting

 5   the privilege stip, which, if it hasn't been filed, will be

 6   filed shortly.  I can tell you guys have been working hard.

 7      So what would you like to discuss this morning?  I guess

 8   maybe I should start with Ms. Davis.

 9        MS. DAVIS:  Yes, Your Honor.

10      So the parties do have some ongoing discussion relating to

11   a few issues.  In particular (audio interference) --

12      (Reporter interruption)

13        MS. DAVIS:  All right.  Thank you.

14      So the parties have, you know, made significant progress

15   on the privilege log protocol that's been submitted, and I

16   understand will be entered soon.  But we do have some ongoing

17   discussions relating to the scope of the remaining issues in

18   the case, and relating in particular to ADI.

19      Plaintiffs today are hoping that we can set some deadlines

20   for the responses that we'll receive from Facebook relating to

21   ADI.

22      Pursuant to the search term protocol, we are also

23   anticipating getting responses from Facebook today on the scope

24   of some of the remaining issues in the case.  And so, you know,

25   we will be meeting and conferring on those issues next week.
```

1          And to that, plaintiffs are also hoping to, you know, have

2     another hearing set where we can submit any of these issues or

3     discuss these issues with the Court before our next hearing

4     before Judge Chhabria.

5          **THE COURT:**  (Inaudible)

6          **MS. DAVIS:**  July 15th.

7          Your Honor, I'm sorry, you were muted.  But I believe you

8     asked what the hearing was.

9          **THE COURT:**  You can read lips.  Good job.

10         **MS. DAVIS:**  That's July 15th.

11         **THE COURT:**  Okay.  All right.  So what would be your

12     proposal, then, I guess in terms of a hearing?

13         And you said there was some other deadlines you wanted to

14     set today.

15         **MS. DAVIS:**  Yes.

16         So I think the first deadline we would like to set is

17     related to when Facebook will provide us the response on ADI

18     and their position on the documents relating to that

19     investigation.

20         We would like to receive a response, you know, in the mid-

21     or -- you know, no later than Thursday of next week, ideally,

22     so that we can continue those discussions.

23         I think the, you know, scope of the remaining issues, we

24     will be getting some information from Facebook about those

25     issues today, and are slated to meet and confer on the 22nd.

1        And, you know, for -- pursuant to the search term

2    protocol, we will be submitting on the 26th to Your Honor, you

3    know, a status update on those issues, and a plan for dealing

4    with them.

5        Given that the next hearing is on the 15th, we -- you

6    know, we're hoping to come before you, you know, either toward

7    -- July 2nd may be a little soon, but we understand Your Honor

8    is unavailable the week following.

9        So we'd like to hear from you what might work with your

10   schedule.  If you are hearing, you know, any matters that week

11   of the 10th, then perhaps we can get on your calendar then.

12        **THE COURT:**  Yeah, no, I won't.  My daughter, um,

13   who's in the Army will be on leave that week.  It may

14   literally be the only time I see her for the rest of the year.

15   So I'm not going to set anything.  But, we may be able to do

16   something early the week of July 15th.

17        But let's first start about the response to the ADI, and

18   from Facebook, when they think -- is Thursday a realistic

19   deadline?

20        **MS. FALCONER:**  Your Honor, this is Russ Falconer for

21   Facebook.

22        I will confess that we're not 100 percent sure what they

23   mean when they say "a response."  A response -- we've had some

24   meet-and-confers this week.  We've started discussing the

25   issue.  And that process is ongoing, and we're happy to

1    continue that.  I think we have a plan to pick that up early

2    next week.

3         But the -- it would be helpful to us maybe to hear more

4    from Ms. Davis what she means when she says "a response."

5              **THE COURT:**  Okay.

6              **MS. DAVIS:**  Sure.

7         So, you know, in our discussions this last week, I think

8    the parties have, you know, gained a better understanding about

9    what some of the areas of dispute are in terms of the nature of

10   the investigation, and what documents, you know, are not, you

11   know, something that Facebook would consider withholding.

12        Yesterday we spoke about a proposal for, you know,

13   production of certain documents, and Facebook let us know that

14   they'd be getting back to us on that proposal.  So we would

15   like a response back on that proposal.

16        And we are hoping with that response we will be able to

17   get a better understanding of the areas of dispute that remain

18   in terms of Facebook's claim of privilege for documents

19   relating to the ADI investigation.  And then be able to, you

20   know, understand what issues are ripe for briefing.

21        In our last hearing Your Honor suggested that we may be

22   able to, because of the complexity relating to privilege

23   issues, brief this on a, you know, motion briefing schedule as

24   opposed to a joint letter brief.  You know, based on the

25   information we have now, we think that's the appropriate way to

1    deal with it.

2         But, you know, at this time we are hoping to swiftly move

3    forward with understanding the scope of what Facebook is

4    willing to produce, and what areas are still subject to dispute

5    under this principal claim.

6         **THE COURT:**  All right.  I just sort of want to know

7     what your final -- nothing's totally final, but your final

8     position is by Thursday.

9         **MS. STEIN:**  Right.

10    So Your Honor, I think what we are a little bit confused

11   about is that we really just spoke about this issue that

12   Ms. Davis is referring to for the first time a couple of days

13   ago, where we -- we talked to plaintiffs about reframing their

14   request so that it didn't specifically target

15   exclusively-privileged documents.  And that was actually our

16   suggestion, because we were trying to find a way to make it

17   workable for us to look for and be able to provide them

18   documents.

19        But that was the initial conversation that we had just

20   this week.  So there's a bit of work, I think, that the parties

21   need to do.

22        So, you know, while we're not reluctant in any way to work

23   through this issue, we feel that kind of getting jammed on it

24   would mean that we would end up in a dispute, rather than being

25   able to work through it collaboratively.

1              **MR. LOESER:**  Your Honor, if I may, it's Derek Loeser.

2        I think the thing to keep in mind with the ADI

3    investigation is we have been seeking these documents for a

4    long time.  Also, these are the documents that were subject to

5    the order in Massachusetts where Facebook asserted that they

6    were work-product privileged, and those arguments were

7    rejected.  Facebook's now appealing that.

8        So it's pretty well defined, you know, frankly, what the

9    documents are, and what positions Facebook has taken.

10       It's pretty hard for us, in drafting a request, to

11   anticipate what documents Facebook will claim are privileged,

12   and what aren't.  It would certainly be easier for them to just

13   simply indicate out of this production, what is it exactly that

14   you would claim as privileged.  Because it can't possibly be

15   all of it.

16       That's frankly -- the order in Massachusetts requires

17   Facebook -- their arguments were rejected, but the Court gave

18   them the opportunity to identify the actually privileged

19   materials, so that those could be withdrawn from the

20   production.

21       So all we're trying do here, we know we're going to have a

22   disagreement here.  We know we're not going to bridge the gap.

23   It would be very helpful to quickly determine what -- the

24   positions that, you know, they've taken before, they're not

25   coming up with new ones, so we just know.  And then we'll brief

1    the issue.

2         We're happy to keep talking about it.  I'm just -- I'm a

3    little pessimistic about our ability to resolve this particular

4    dispute, given the history of it.

5              MS. STEIN:  So the request that we've been discussing

6    does not track the request in the Massachusetts AG case.  The

7    request that we have been discussing specifically asks for all

8    the documents that the lawyers identify to support the

9    escalation of certain apps.  And that - I mean, we could just

10   simply say that that calls for work product, and we can't

11   identify those documents.

12        We were trying to work through that by saying:  Look, the

13   way you frame that request doesn't work; let's talk to you

14   about a way to frame it in a different way so that we can

15   search for the underlying documents that you're asking for, and

16   provide them to you.

17        And so we're trying to find a systematic way to do this,

18   without just making a blanket objection.

19             THE COURT:  What if we were to divide it into two

20   things?  On the one hand, they want to -- I assume you're

21   asking for everything that was at issue in the Massachusetts

22   case.

23        Is that right?

24             MR. LOESER:  Right.

25             THE COURT:  Right?  Okay.

1      So you can start, deal with that part first.  Right?

2      And either your position will be the same as it is in

3  Massachusetts, or it will be different.

4      And then the next question is:  What, if anything, is

5  there in addition to what was asked for?

6      So is there anything in addition to what was asked for in

7  Massachusetts?

8          **MS. STEIN:**  Yes, so it was --

9          **THE COURT:**  No, no, I guess -- I'm asking the

10  plaintiffs.

11          **MS. STEIN:**  Okay.

12      **MR. KO:**  Your Honor, this is David Ko.  I can speak

13  to that.

14      I want to make sure -- the Massachusetts issues are, of

15  course, relevant.  But our requests with respect to the

16  documents related to the app developer investigation conducted

17  by Facebook are much broader than that.  Right?

18      It's --

19          **THE COURT:**  Okay, right.

20      **MR. KO:**  It's documents related to what they've done

21  in the wake of Cambridge Analytica from 2018 to present,

22  ongoing.  You know, all documents related to that.

23          **THE COURT:**  Right.  Okay, that's -- right.  I'm just

24  trying to break it in two, because I'm figuring with respect

25  to the request as to the Massachusetts documents, it seems to

1    me there's -- there's no problem with saying by next Thursday,

2    Facebook needs to say what is their position with respect to

3    that.  Is -- our position presumably it's going to be the same

4    as it is in the Massachusetts case.

5        But maybe not.  So they should have to nail that down by

6    next Thursday.

7        Now, with respect to the additional docs, is this on your

8    agenda for your meeting on the 22nd?

9        Like, next week, are you -- are you discussing this?

10        **MS. DAVIS:**  So, on the 22nd, we were discussing, you

11    know, those requests that are outstanding where the threshold

12    position of Facebook is that, you know, documents will not be

13    produced, or they are outside the scope of the case.

14        I think it would be a great idea to add this to our agenda

15    for that discussion.

16        **THE COURT:**  Yeah.  Why don't we do that.  All right.

17        So I won't give you, necessarily, that deadline of the

18    Thursday, but just include it within there, because it sounds

19    like you started talking.

20        But at least with respect to where the request overlaps

21    with what was requested in Massachusetts, by Thursday, you

22    should have your decision finalized.

23        **MS. CLARK:**  Your Honor, if I may for a second.

24        I do want to be clear that the request plaintiffs have

25    done us is quite different from the request that we received

1   for Massachusetts.

2       And one of the issues we had been talking to the

3   plaintiffs about, I -- we had had a discussion at one point

4   where they asked that we simply turn over anything we gave

5   Massachusetts.

6       And we talked about the fact that the way their request is

7   framed is actually quite difficult to identify what portion of

8   the Massachusetts documents are responsive to their request.

9           **THE COURT:**  Well, can I ask you something?

10      But, if -- maybe it's not, maybe there's some stuff that

11  is not responsive.  But if they're trying to make it easier, if

12  it makes it easier just saying:  Give us what you gave us in

13  Massachusetts, just give it to them.  I mean, you already have

14  it.  It was produced.

15      I mean, I understand that it may include non-responsive

16  documents.  But if now, in part of the meet-and-confer, they're

17  saying:  Well, give us that...

18          **MR. KO:**  Yeah.  And Your Honor, just to address

19  Ms. Clark's point about this request, we have also discussed

20  at length other requests that we have submitted to Facebook

21  that clearly cover what we'd be asking for.

22      For example, there are requests that talk about all

23  (inaudible), all internal policies that have been enforced by

24  Facebook against third parties.

25      So to the extent they have any confusion or ambiguity

1 about that specific request, there are a whole set of other

2 requests that clearly, it's material.

3   So the bottom line is we want to get this process started

4 of getting these documents related to this ADI investigation,

5 which is fundamentally relevant to all our claims.  Right?

6 Because it's about the enforcement of Facebook's policies

7 against third parties that are taking data from Facebook's

8 platform.

9    **MR. SNYDER:**  Your Honor, this is Mr. Snyder.  I'm

10 going to defer to Ms. Stein for a moment.

11   I just want to frame the issue just very briefly, which is

12 that the app developer investigation was an internal legal

13 investigation.

14   My law firm actually supervised it, at the direction of

15 in-house counsel at Facebook.  And it's the privileged

16 documents that we are objecting to.

17   We are going to -- what happened was we conducted an

18 internal investigation of -- retrospectively, Your Honor, of

19 all third-party apps on the Facebook platform, to go back in

20 time and see if there were any Cambridge Analytica-like

21 incidents.  It turned out there were none.

22   But as a result of that searching retrospective internal

23 examination, we did identify third parties with respect to

24 which we took certain enforcement measures.  We sent them

25 letters.  We terminated them.  In a few cases, we sued them.

1          All of Facebook's communications with those third parties

2     are fair game.  We're going to produce those.  And so they're

3     going to get a substantial amount of information relating to

4     all enforcement actions we took with third parties as a result

5     of our privileged internal review.

6          Much of the information has already been produced.  Some

7     of it is in the queue for production right now.

8          And so there's going to be a lot of information they're

9     going to get about our enforcement measures.

10         And what we're objecting to producing is the information

11    that Facebook's counsel generated, which is my law firm working

12    with in-house lawyers at Facebook.

13         And that's what is the ADI, or the app developer

14    investigation.  That's separate and apart from, then,

15    enforcement actions that we took.  And that is, to the extent

16    responsive -- and I think most it is, if not all of it -- we're

17    going to be producing that.

18         The extent to which those investigative matters are

19    privileged is the subject of a pending appeal in Massachusetts.

20    And the Massachusetts Supreme Court recently granted

21    extraordinary review of an order that required us to produce

22    what we said was privileged materials.

23         But even the order in that case, Your Honor, recognizes

24    that many of the materials that the plaintiffs here are asking

25    for are protected by the attorney/client privilege.

```
 1        So it's not as simple as:  Turn over everything we turned

 2   over to Massachusetts.

 3        THE COURT:  No, no, no, no; I'm sorry.  I

 4    misunderstood.

 5        I guess all I'm saying is if there were documents that you

 6   weren't objecting to turn over, turn over.  That's all.  Not

 7   that you have to waive your arguments.

 8        But what it sounds to me like is that you are pretty far

 9   along, and that you have the position.  That's fine.  They're

10   not arguing right now that your position is right or wrong.

11        MR. SNYDER:  Right.

12        THE COURT:  They just want you to take your position.

13        So it seems to me as a goal we should have for next

14   Thursday on the ADI, the investigation, take your -- take your

15   position.

16        I'm confident, because you actually have been working

17   really well and don't want to bring disputes to me that you

18   don't have to, that come Thursday, if it looks like there's a

19   path that the dispute can be narrowed, the parties will

20   continue along that path, and try to narrow it.

21        But -- so I'm going to give you that goal of next Thursday

22   on these ADI.  Just take your position.  Whatever it is.

23        MR. SNYDER:  Yes, Your Honor.

24        THE COURT:  I have no view on it, whatsoever.  Either

25    way.
```

 1        **MS. WEAVER:**  Your Honor, this is Lesley Weaver.

 2   There's one additional issue.  I think that's exactly right.

 3   We just want a position.

 4        And we also want, if there was a privilege log prepared --

 5   and it's -- also the D.C. Attorney General is seeking these

 6   documents as well -- that lays out any of these issues so that

 7   we can really get our arms around them now, we'd like that to

 8   be produced.

 9        If there isn't, that's fine.

10        **THE COURT:**  Okay.  You can -- you can talk about that

11   with them.

12        **MS. WEAVER:**  Great.

13        **THE COURT:**  As part of that.  Okay.  All right.

14   So I guess then the other thing we need to discuss is a

15   date.  And would this date potentially -- this would just be

16   another status.

17        Or, do the parties anticipate there would actually be

18   something for me to -- like, not a ripe -- brief dispute that I

19   would decide at this hearing?

20        (No response)

21        **THE COURT:**  No.

22        **MS. CLARK:**  I think we're just discussing a status

23   conference.

24        **MS. DAVIS:**  Yes, Your Honor.

25        **THE COURT:**  So I could do it on the 13th then.  I

1    think I can.  Let me see.

2         Oh, no, I have -- yeah.  I could do it on the 13th.

3    Probably any time, ten -- any time 10:30 or later.

4              MS. WEAVER:  And Your Honor, it will be a status.

5         It is possible that after we receive today Facebook's

6    position on whether it is withholding anything categorically

7    responsive to our request, that something like that might

8    bubble up or the ADI issue, of course.

9         But the 13th, I think, is fine for everybody on our side.

10             THE COURT:  Yeah.  Actually, it does look like I have

11    a settlement conference.

12        Is 8:30 too early for people?

13             MS. WEAVER:  No.

14             THE COURT:  Everyone is shaking their head.  Okay.

15    Can we do the 13th at 8:30, then?

16        But I can't promise you, if you submit something that

17    previous week, that I will be prepared to address it.  Just

18    telling you.

19             MR. SNYDER:  Judge, we do have one more issue, which

20    is the plaintiffs' production.

21        We've produced now a million pages of materials.  We're

22    making another large production in a couple of weeks.  And I

23    don't think the plaintiffs have produced a single document.  We

24    served a document request, three months ago.  And I just want

25    a deadline for them to begin producing their documents.

1    I think they've suggested that they won't begin producing

2 until the parties fully meet and confer about their responses

3 to our requests.  And there are surely documents that they can

4 produce while those discussions occur.

5    You know, we produced thousands of pages within days of

6 responding to their requests.  And then we did rolling

7 production.  So hopefully there will be some low-hanging fruit

8 they can send us.

9    And these are documents that are critical, that go to

10 standing, which, as Your Honor is aware, is a threshold -- we

11 think dispositive -- issue in the case.

12    **THE COURT:**  Okay.  Do the plaintiffs have an idea of

13  when they can produce some documents?

14    **MS. WEAVER:**  Sure.  This is Lesley Weaver.

15    We've been able to discuss this with Facebook.  They

16 didn't actually even propound RFPs until April.  We have been

17 collecting, and meeting with our custodians all along.

18    One of the issues, for example, the reason that we haven't

19 produced is Facebook actually produced to us their activity on

20 Facebook, which is duplicative, largely, of what we would then

21 send back to them.  So we actually need to have a discussion

22 about what it is that they want.

23    And Facebook, for example, did not produce anything before

24 they met and conferred with us.  And --

25    **THE COURT:**  Well, no, no, yeah, we're not going to

```
1    get into that.

2            MS. WEAVER:  Right.

3            THE COURT:  If it's what's on Facebook, I do warrants

4    all the time.  Facebook has all that information.

5            MS. WEAVER:  Right.  So --

6            THE COURT:  Anyway.  So put that on your agenda for

7    next week, then, as well.

8            MS. WEAVER:  We will.

9            MR. SNYDER:  Thank you, Judge.

10            THE COURT:  Okay.  All right, great.

11        Thanks, everyone.  Have a good Fourth of July, then.  And

12    I'll see you on July 13th at 8:30 a.m.

13            MR. SNYDER:  And welcome home to your daughter, and

14     thank her for her service.

15            THE COURT:  All right.  Thank you.

16        Bye-bye.

17            MS. CLARK:  Thank you very much.

18        (Proceedings concluded)

19

20

21

22

23

24

25
```

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States
Court, Northern District of California, hereby certify that the
foregoing is a correct transcript from the record of
proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Tuesday, June 23, 2020